IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RYAN SAVINELL,                                                                             PLAINTIFF

v.                                              CIVIL ACTION NO.:  4:14cv18-MPM-DAS

GLORIA ALEXANDER, et al.,                                                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Ryan Savinell, an inmate proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983, alleging that Defendants Arthur L. Smith and Gloria Alexander failed to protect him from harm at the hands of other inmates.[1]  Presently before the Court is Defendants' motion to dismiss the action, or, in the alternative, for summary judgment.  Savinell has responded to the motion, and Defendants have submitted a rebuttal thereto.  Having reviewed the parties' pleadings and competent summary judgment evidence, as well as the applicable law, the Court finds that Defendants' motion should be granted.

### Plaintiff's Allegations

In March 2011, while housed in Unit 29 at the Mississippi State Penitentiary ("MSP"), Savinell got into a physical altercation with another inmate alleged to be a Gangster Disciples gang member.  Savinell alleges that the Gangster Disciples put out a "hit" on him as a result of the fight, and that he went into protective custody to avoid retribution.  Savinell maintains that he signed himself out of protective custody some twelve months later, and that he was subsequently transferred to the Carroll-Montgomery Regional Correctional Facility ("CMRCF"), where

---

[1] Savinell initially brought suit against additional defendants who were dismissed from this action following a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). (*See* ECF Nos. 12 & 17).

1

Defendants are employed.

On September 3, 2012, Savinell got into a fight with an inmate at CMRCF, and he was placed in segregation. Savinell states that requested to be moved to a facility where he could be placed in protective custody, inasmuch as CMRCF does not have a protective custody unit. Savinell alleges that he warned CMRCF personnel that he would not be safe in general population. Despite this warning, he maintains, CMRCF personnel did not recommend him for protective custody, and he was not placed in protective custody when he was subsequently moved to MSP on October 1, 2012. Savinell alleges that he was forced into general population upon his return to MSP and was "jumped on" by several Gangster Disciples on December 27, 2012. Savinell allegedly sustained a stab wound during the altercation and spent several weeks in MSP's hospital.

In his complaint, Savinell maintains that Gloria Alexander, a case manager at CMRCF, failed to recommend him for protective custody when she requested his transfer from CMRCF, and that she thereafter denied his administrative remedy request for review of that decision. He maintains that Warden Arthur L. Smith approved Gloria Alexander's decisions and ignored the threat the Gangster Disciples posed to Savinell.

## Summary Judgment Standard[2]

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

---

[2] Defendants have styled their motion as one to dismiss for failure to state a claim and/or qualified immunity, or alternatively, one for summary judgment. Because Defendants only address the summary judgment standard in their memorandum in support of their motion, however, the Court construes the pleading under summary judgment standards.

2

R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining the appropriateness of summary judgment, all facts are considered in favor of the nonmoving party, including all reasonable inferences therefrom. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, in the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis omitted).

Summary judgment is proper, then, "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Industries, Inc..*, 839 F.2d 1121, 1122 (5th Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted)). The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, he must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Therefore, summary judgment should be granted if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993).

**Summary Judgment Evidence**

On September 3, 2012, Savinell got into a fight with an inmate at CMRCF and was placed in segregation. (*See* Pl. Compl., ECF No. 1, p. 8). On September 5, 2012, Defendant Gloria Alexander conducted a seventy-two hour review, and Savinell stated at that time that he did not want to return to general population, as he feared for his life. (*See* Mot. Summ. J. Ex. 3, Offender Log). A few days later, Savinell "Red Tagged"[3] four inmates housed at CMRCF, claiming that the inmates were affiliated gang members who had "a hit out on him." (*Id.*). Defendant Alexander entered notes in Savinell's Offender Log, MDOC's running record of events, documenting his fears and identifying the red-tagged inmates. (*See* Mot. Summ. J. Ex. 2, Aff. of Gloria Alexander; Ex. 3). On or about September 12, 2012, while he was still in segregation, Savinell wrote an Administrative Remedy ("ARP") request asking to be transferred to protective custody at MSP. (*See* Mot. Summ. J. Ex. 4, ARP #MSP-12-2107). The Department of Offender Services, which controls the decisions on when and where to transfer inmates, decided to transfer Savinell to MSP. (*See* Mot. Summ. J. Ex. 2, p.2). Savinell was kept in segregation at CMRCF until he was picked up on September 28, 2012, to be transferred to MSP. (*See* Mot. Summ. J. Ex. 1, MDOC Housing History; Ex. 2, Ex. 3).

On October 1, 2012, an MSP official made the following notation in Savinell's Offender Log:

> Offender was received at MSP today. After review of his record, his alerts indicated that offender was not to be moved from Carroll CCF without contacting CID Rogers. I contacted C/M Redding-Gallion in Offender Services of the

---

[3] Defendant Alexander explains that "[a] 'Red Tag' is a process where inmates may identify specific offenders from whom they should be separated." (Mot. Summ. J. Ex. 2, p. 2 ¶ 5).

situation who advised offender was to be placed in our general population and that he was brought in because of situation at Carroll CCF and Reg Tags. Associate Warden Foster was also advised of C/M Redding/Gallion decision to house in general population.

(Mot. Summ. J. Ex. 3, p. 2).

Defendant Alexander received Savinell's First Step ARP request on October 8, 2012, after he had already been transferred to MSP. (Mot. Summ. J. Ex. 2; Ex. 4, ARP #MSP-12-2107). Because Savinell had been transferred away from the red-tagged inmates and the new institution was aware of his concerns, Defendant Alexander states that she believed in good faith that the complaint had been resolved and responded accordingly. (Mot. Summ. J. Ex. 2, ¶9 ). Savinell never requested a Second Step Response. (*See* Mot. Summ. J. Ex. 2; Ex. 4).

Savinell was housed by MSP in Unit 29, Building C from October 1, 2012, until October 30, 2012. (Mot. Summ. J. Ex. 1). Savinell contends that he told a captain, lieutenant, and field operations officer at MSP that he needed protective custody and was subsequently transferred to the hospital (Unit 42) on October 30, 2012, because there were no beds available in protective custody. (Mot. Summ. J. Ex. 1; Ex.5, *Spears* excerpt, p. 16). According to Savinell, he then agreed to move to Unit 30 but alleges that after a captain at MSP agreed to allow him to go to Unit 30, a field operations officer refused and returned him to general population in Unit 29. (Mot. Summ. J. Ex. 5, pp. 16-17). Savinell maintains he was subsequently stabbed at MSP on December 27, 2012.[4]

---

[4] In his response to Defendants' motion, Savinell argues that Defendants failed to provide him with his medical records. However, the Court entered an order staying Defendants' discovery obligations, and therefore, Defendants did not fail to comply with the Court's orders. For present purposes, the Court assumes as true that Savinell was stabbed at MSP on December 27, 2012.

5

**Failure to exhaust administrative remedies**

Because Savinell was incarcerated when he filed the instant lawsuit, the Prison Litigation Reform Act (PLRA) applies to this case. *See* 28 U.S.C. § 1915(g). The PLRA requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012). There is no futility exception to the exhaustion requirement, and exhaustion must be pursued even where the sought relief is unavailable through the administrative process. *See Hicks v. Lingle*, 370 F. App'x 497, 499, 2010 WL 1141552, at *2 (5th Cir. Mar. 17, Cir. 2010) (citing *Booth v. Churner*, 532 U.S. 731, 739-41 & n.6 (2001)); *see also Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Dismissal is mandatory, then, where a prisoner fails to properly exhaust his available prison grievances prior to filing his complaint. *Gonzalez*, 702 F.3d at 788.

MDOC has implemented its administrative review procedure, the Administrative Remedy Program ("ARP"), in all of its facilities across the State. *See, e.g.*, *Stewart v. Woodall*, No. 2:11-CV-207, 2012 WL 2088883, at **2-3 (S. D. Miss. May 2, 2012), Report and Recommendation adopted by Order dated June 8, 2012 (reported at 2012 WL 2089508). Pursuant to the adopted ARP procedures, an inmate is required to submit his initial grievance or request in writing to the Legal Claims Adjudicator within thirty days of an alleged incident. (*See* Mot. Summ. J. Ex. 6, MDOC Inmate Handbook, Ch. VIII). If, after screening, the request is accepted in to the ARP process, it is forwarded to the appropriate prison official who will investigate and issue a First Step Response. (*Id.*). If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing ARP Form ARP-2 and sending it to the Legal Claims Adjudicator. (*Id.*). A final decision will then be made by the Superintendent, Warden, or

Community Corrections Director. (*Id.*). If the inmate is not satisfied with the Second Step Response, he may file suit in State or Federal court. (*Id.*).

As previously noted, Savinell prepared an ARP request on September 12, 2012, and Defendant Alexander prepared a response to the request on October 8, 2012. (*See* Mot. Summ. J. Ex. 2; Ex. 4). Savinell admits that he did not pursue a Second Step Response to his ARP request but maintains that an officer told him that there was not an ARP box in the hallway of Unit 29. (ECF No. 41, pp. 33, 36). However, Savinell also states that he decided to "screw an ARP and its 2nd Step." (*Id.*). As noted above, the grievance process must be carried through to its conclusion before suit can be filed under the PLRA. *See Tompkins v. Holman*, No. 3:12-CV-87, 2013 WL 1305580, at *1 (S.D. Miss. March 26, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Savinell failed to exhaust his administrative remedies. Therefore, this action must be dismissed.

## Absence of Liability

### A. Eighth Amendment

Although dismissal of this suit is mandatory based on Savinell's failure to exhaust his administrative remedies, the Court nonetheless addresses the issue of Defendants' liability. Savinell alleges that they failed to protect him by failing to ensure that he received protective custody at MSP. The Court notes that "[t]he Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citation omitted). Officials fail in this duty "only when they are deliberately indifferent to a substantial risk of serious harm." *Id*.

A plaintiff alleging a failure to protect must prove that the defendants actually knew of an

7

"excessive risk to inmate health or safety" and disregarded the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837, 839-40, 847 (1994). The standard is akin to "subjective recklessness as used in the criminal law." *Id.* at 839. Negligent failure to protect will not support the finding of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Rather, a conclusion of deliberate indifference, "must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Therefore, in order to survive summary judgment on his claim, Savinell must "produce sufficient evidence of: 1) substantial risk of serious harm, 2) [Defendants'] deliberate indifference to that risk, and 3) causation." *White v. Fox*, 470 F. App'x 214, 220 (5th Cir. 2012) (citing *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003)).

At the outset, the Court notes that Savinell has produced no evidence that Defendant Arthur Smith had any involvement in denying Savinell any particular classification or custody. Rather, Savinell admits that Defendant Smith, upon learning about Savinell's housing concerns, "wrote some alerts about [Savinell] not being able to be moved from CMRCF to MSP without contacting CID Rogers and CID Ricky Scott[.]" (Response to Mot. Summ. J. p. 22-23). Savinell's only evidence against Defendant Smith is the fact that Smith is the Warden at CMRCF. Savinell cannot establish liability against Defendant Smith based solely on his supervisory position, and Smith, therefore, is entitled to summary judgment. *See Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002) (holding that § 1983 does not "create supervisory or *respondeat superior* liability"); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (holding that a supervisor is not responsible for employee acts unless plaintiff shows that the supervisor was personally involved in the alleged deprivation, or plaintiff demonstrates "a sufficient causal

connection" between the supervisor's acts and the alleged violation). The Court otherwise determines that neither Defendant Smith nor Defendant Alexander may be held liable in this action, as Savinell has made no showing that either wantonly disregarded a risk to Savinell or failed to take reasonable measures to abate a risk to him. *See, e.g., Farmer*, 511 U.S. at 847.

On the contrary, the competent summary judgment evidence demonstrates that Defendant Alexander acted reasonably to prevent harm to Savinell once she became aware of his concerns about specific inmates at CMRCF. (*See* Mot. Summ. J. Ex. 3). While CMRCF does not have protective custody, Defendant Alexander recommended Savinell remain in segregation away from others. (*See* Mot. Summ. J. Ex. 2; Ex. 3). Based on Defendant Alexander's recommendation, Savinell remained in segregation at CMRCF until he was picked up to be transferred to another institution. (*See id.*). Moreover, Defendant Alexander made sure MDOC, the Department of Offender Services, and officials at MSP knew of Savinell's reported concerns by noting those concerns and the identities of the red-tagged inmates in his running Offender Log. (*See id.*). She also noted in his log, prior to his transfer, her recommendation that Savinell remain in segregation. (*See* Mot. Summ. J. Ex. 3). These actions, as documented in the competent summary judgment evidence, represent a reasonable response to Savinell's concerns.

Second, neither Defendant had any control over Savinell's classification or confinement at MSP. Neither were personally involved in the decision not to place Savinell in protective custody at MSP, and neither Defendant had any authority to determine Savinell's classification at MSP. (*See* Mot. Summ. J. Ex. 2 ¶ 7; Miss. Code Ann. §§ 47-5-99, through 47-5-103). Rather, classifications, including protective custody determinations, are made by MDOC through the

classification hearing officers and classification board.[5] *See Tubwell v. Griffith*, 742 F.2d 250, 253 (5th Cir. 1984); Miss. Code Ann. §§ 47-5-99 through 47-5-103; *see also Fairley v. Simms*, No. 3:12-CV-220 (S.D. Miss. Nov. 1, 2013) (granting summary judgment in favor of case manager where case manager red-tagged the identified offenders and placed this information in a file accessible to all MDOC facilities, and case manager did not have authority to order or deny protective custody) (attached to Mot. Summ. J. as Ex. 7). Therefore, the evidence demonstrates that Savinell's classification at MSP is a decision over which Defendants had no control.

Finally, Savinell's injuries were not caused by Defendants. Savinell was allegedly stabbed approximately three months after he left CMRCF and after he was housed in three different units at MSP. (*See* Mot. Summ. J. Ex. 1). Savinell's Offender Log shows that after he was received at MSP and his alerts were reviewed, MSP contacted the Department of Offender Services, which made the decision to classify and place Savinell in general population. (*See* Mot. Summ. J. Ex. 3). Defendants took measures to protect Savinell at CMRCF, and they cannot be held accountable for any injuries resulting to Savinell approximately three months after his transfer to MSP. Defendants are entitled to summary judgment.

## B. Other Claims

In conjunction with his Eighth Amendment claim, Savinell broadly asserts that Defendants violated the Fourteenth Amendment's Equal Protection Clause, the Bill of Rights, and Article III of the Mississippi Constitution. The Court notes that to he extent Savinell raises a Fourteenth Amendment equal protection claim, he must allege that he "received treatment

---

[5] The classification board consists of "the commissioner, or his designee, deputy commissioner of institutions[,] and the director of offender services." Miss. Code Ann. § 47-5-103.

different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Taylor v. Johnson*, 257 F.23 470, 473 (5th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985)). Savinell has not alleged unequal treatment due to discriminatory intent and has, therefore, failed to state a Fourteenth Amendment claim. Moreover, Article III of the Mississippi Constitution is entitled "Bill of Rights," and § 28 of Article III prohibits cruel or unusual punishment, similar to the Eighth Amendment. *See* Miss. Const. art. III, § 28. For the same reasons Savinell's Eighth Amendment claim fails, so does his claim based on the Mississippi Constitution and its Bill of Rights. Finally, the Court finds that, to the extent Savinell attempts to assert State law claims, they are barred by the Mississippi Tort Claims Act. *See* Miss. Code. Ann. § 11-46–9(1)(m) (precluding inmates from suing State entities and/or their employees).

## Conclusion

For the reasons set forth herein, Defendants' motion to dismiss, or alternatively, for summary judgment [35] is **GRANTED**, and judgment will enter in favor of Defendants. A separate judgment in accordance with this opinion and order will enter today.

**SO ORDERED** this the 9th day of October, 2014.

/s/ Michael P. Mills
MICHAEL P. MILLS
U.S. DISTRICT JUDGE